BLANCHE, Justice.*
Defendant, Johnnie Lee Abercrumbia, was charged by grand jury indictment with first degree murder. Following trial, a twelve-member jury returned a unanimous verdict of guilty of manslaughter in violation of R.S. 14:31. Defendant was sentenced to twenty-one years at hard labor. On appeal, defense counsel alleges twenty-seven assignments of error. We find merit in assignment Number 26, in which defense counsel claims the trial court erroneously charged the jury on the definition of manslaughter.
On the day of the shooting, defendant was playing pool at a local cafe. He had a small snake with him which he placed, or attempted to place, on the victim. As a result, the victim tried to hit defendant, but instead, hit a pool stick which was in his hand. The pool stick broke and hit the defendant’s head. Defendant and the victim began to argue and then went outside the cafe.
One state witness testified that he followed the defendant and victim out of the cafe and saw defendant pull a gun. Another witness saw the gun in defendant’s hand after he heard a shot. Either one or two shots were fired. The victim was hit in the chest and later died in the hospital.
In closing argument, defense counsel argued that the shooting was committed in self-defense and also argued that it was an accident. At trial, the defendant testified that the victim, with a two by four in his hand, came after him as though to hurt him. Defendant claimed he pulled a gun and “threw it up” in the air in order to scare the victim, but didn’t intend to shoot him. Defendant’s version was that the gun “could have went off when it was on the way up”, allegedly because he was nervous.
Defense counsel claims the trial judge, in his charge to the jury, erroneously stated the definition of manslaughter, the crime for which defendant was convicted. R.S. 14:31 defines manslaughter as:
“(1) A homicide which would be murder under either Article 30 (first degree murder) or Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immedi *928 ately caused by provocation sufficient to deprive an average person of his self control and cool reflection. Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender’s blood had actually cooled, or that an average person’s blood would have cooled, at the time the offense was committed; or (2) A homicide committed, without any intent to cause death or great bodily harm, (a) When the offender is engaged in the perpetration or attempted perpetration of any felony not enumerated in Articles 30 or 30.1, or of any intentional misdemeanor directly affecting the person; or (b) When the offender is resisting lawful arrest by means, or in a manner, not inherently dangerous, and the circumstances are such that the killing would not be murder under Articles 30 or 30.1.”
The trial judge instructed the jury that:
“Manslaughter is a homicide which would be murder under either Article 30, first degree murder, or Article 30.1, second degree murder, but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self control and cool reflection. Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender’s [blood] had actually cooled or that an average person’s blood would have cooled at the time the offense was committed; or a homicide committed without any intent to cause death or great bodily harm; or when the offender is engaged in the perpetration or attempted perpetration of any felony not enumerated in Article 30 or 30.1, or of any intentional misdemeanor directly affecting the person.” (emphasis supplied)
It can readily be seen that the instruction of the law of manslaughter is erroneous in that the trial judge used the words, “Manslaughter is ... a homicide committed, without any intent to cause death or great bodily harm; [or] when the offender is engaged in the perpetration . . .”. By inserting the conjunction or into the definition the judge effectively created a new category of manslaughter. He left “a homicide committed, without any intent to cause death or great bodily harm” standing alone as a definition of manslaughter without the intended qualifying phrase “when the offender is engaged in the perpetration or attempted perpetration of any felony not enumerated in Articles 30 or 30.1, or any intentional misdemeanor directly affecting the person.”
In State v. Dardar, 353 So.2d 713 (La. 1977), we stated with regard to a disputed portion of a jury charge that such disputed portion must be considered and viewed in context with the entire instruction, and when so viewed, should not be disturbed unless erroneous and prejudicial. Here, the disputed instruction informed the jury that every homicide committed without any intent to cause death or great bodily harm, e. g., an accident or negligent homicide, is manslaughter. The instruction was not only incorrect, but was highly prejudicial when it is considered that defendant claimed the shooting was an accident. Accordingly, if the jury believed defendant’s version that the shooting was accidental, they would have been duty-bound in light of the judge’s erroneous instruction to return a verdict of manslaughter.
Although counsel properly objected, the instruction was never recalled and corrected. Neither was the erroneous instruction otherwise offset by an instruction that the jury must acquit if it found the shooting was an accident or negligent homicide.
The instruction which defined manslaughter was both erroneous and prejudicial and, therefore, the conviction must be reversed. Accordingly, the case is remanded to the district court for a new trial in accordance with law.
REVERSED AND REMANDED.

 Judge Edward A. de la Houssaye, III participated in this decision as Associate Justice ad hoc.